473 P.2d 917

**CITY OF HOBBS, Plaintiff-Appellee,**

v.

**Loarn Anthony BISWELL, Defendant-Appellant.**

**No. 405.**

Court of Appeals of New Mexico.
June 26, 1970.

Rehearing Denied July 20, 1970.

Certiorari Denied Aug. 20, 1970.

R. E. Richards, Girand, Cowan & Richards, Hobbs, for defendant-appellant.

Donald D. Hallam, Hobbs, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Defendant was found guilty of violating an ordinance of the City of Hobbs which regulates pawnbrokers. The fact of the violation is not an issue. The appeal involves the validity of the ordinance. The issues are: (1) The authority of the City to adopt the ordinance; (2) whether the ordinance was properly adopted; and (3) whether the ordinance is in conflict with a State statute.

*Authority to adopt the ordinance.*

██ Defendant contends the City had no authority to adopt the ordinance. He reminds us that a municipality's authority to regulate pawnbrokers is derived from the State and must be found in a State statute conferring that authority. City of Las Cruces v. Rio Grande Gas Company, 78 N.M. 350, 431 P.2d 492 (1967); Bowdich v. City of Albuquerque, 76 N.M. 511, 416 P.2d 523 (1966). As a general proposition this is true; however, see §§ 14–3–1 and 14–14–11, N.M.S.A.1953 (Repl. Vol. 3). In this case we have no information indicating the statute under which the City of Hobbs was incorporated and no information indicating the City had or exercised any authority to adopt ordinances under any special grant of power. Therefore, we proceed under the assumption that the general rule applies and that the City's authority to adopt the questioned ordinance must be found in general statutory law.

The City asserts specific authority to adopt the ordinance is found in § 14–17–20 (A), N.M.S.A.1953 (Repl. Vol. 3). This section authorizes municipalities to "[r]egulate, tax or license secondhand dealers and junk store dealers or any person who accepts used merchandise for value;". The City contends that a pawnbroker is one who accepts used merchandise for value. Webster's Third New International Dictionary defines pawnbroker as "one that loans money on the security of personal property pledged in his keeping." The questioned ordinance uses "pawnbroker" in the same sense. We pass the question whether a pawnbroker, as defined by the dictionary, is one who accepts used merchandise for value because the ordinance is not limited to persons who accept "used merchandise" and because there is nothing indicating the merchandise involved in this case was or was not "used merchandise." Accordingly, we do not base our decision on § 14–17–20(A), supra.

Section 14–16–1, N.M.S.A.1953 (Repl. Vol. 3) reads in part:

"The governing body of a municipality may adopt ordinances or resolutions not

inconsistent with the laws of New Mexico for the purpose of:

"A. Effecting or discharging the powers and duties conferred by law upon the municipality;

"B. Providing for the safety, preserving the health, promoting the prosperity, improving the morals, order, comfort and convenience of the municipality and its inhabitants; * * *"

■ Under § 14–16–1, supra, a municipality may adopt ordinances carrying out powers and duties specifically authorized by statute. This is subsection A. In addition, a municipality is authorized to enact ordinances in connection with the items named in subsection B. The ordinance adopting authority of subsection B, often referred to as a general welfare clause, is independent of and in addition to ordinance adopting authority conferred by specific statutes. See City of Clovis v. Archie, 60 N.M. 239, 290 P.2d 1075 (1955); State ex rel. Coffin v. McCall, 58 N.M. 534, 273 P.2d 642 (1954); City of Clovis v. Dendy, 35 N.M. 347, 297 P. 141 (1931).

In addition to the authority to adopt ordinances pursuant to § 14–16–1(B), supra, § 14–17–1, N.M.S.A.1953 (Repl. Vol. 3) authorizes municipalities to:

" * * *

"F. Protect generally the property of its municipality and its inhabitants; and

"G. Preserve peace and order within the municipality."

■ These subdivisions of § 14–17–1, supra, confer a "police power" upon municipalities to protect their inhabitants and preserve peace and order within the municipal limits. A municipality may adopt ordinances for this purpose under authority of § 14–16–1(A), supra.

"General welfare" power and "police" power are concepts which, if independent of one another, tend to merge. As stated in State v. Dennis, 80 N.M. 262, 454 P.2d 276 (Ct.App.1969):

" * * * A statute is sustainable as a proper exercise of that [police] power

only if the enactment is reasonably necessary to prevent manifest or anticipated evil, or is reasonably necessary to preserve the public health, safety, morals, or general welfare. * * *"

6 McQuillin, Municipal Corporations §§ 24.13, 24.33 (3rd ed. rev. 1969).

■ The City had authority to enact ordinances under its general welfare power and its police power. It had authority to regulate pawnbrokers under those powers. 7 McQuillin, Municipal Corporations § 24.335 (3rd ed. rev. 1968) states:

" * * *

"Municipal police regulations generally may be made with respect to pawnbrokers and pawnbroking, unless the subject is exclusively regulated by state statute. * * *

" * * * However, this municipal competency can be predicated on municipal police power. In this connection, regulation of pawnbroking under the police power has been placed on the basis of facilitation of pawnbroking to crime. Thus it has been said: 'The business of pawnbrokers because of the facility it furnishes for the commission of crime, and for its concealment, is one which belongs to a class where the strictest police regulation may be imposed. * * *'

" * * *

" * * * [A]n ordinance requiring pawnbrokers to keep a book in which shall be entered a description of all property left with them in pawn, together with the name and description of the person leaving it, and to submit such book to the police or other public officers on demand has been held to be reasonable, as a mere police regulation to aid in the detection and prevention of larceny.

* * *"

The State statute conferring authority upon municipalities to adopt ordinances regulating pawnbrokers, §§ 14–16–1 and 14–17–1, supra, was enacted in 1965. Defendant asserts this authority was taken away by a later statute. This statute is §§

49–13–1 through 49–13–5, N.M.S.A.1953 (Repl. Vol. 7, Supp.1969), is known as the "Used Merchandise Act," and was enacted in 1967. This later act regulates various types of businesses, including pawnbrokers.

▆▆ With the enactment of § 49–13–1 et seq., supra, there is regulation of pawnbrokers by both the State and the municipality. The fact of double regulation does not result in the withdrawal of the municipality's authority to regulate. An ordinance may duplicate or complement statutory regulations. State v. McCall, supra; Mares v. Kool, 51 N.M. 36, 177 P.2d 532 (1946); City of Clovis v. Dendy, supra. There may be a question (as in this case—see Point 3) whether the ordinance is invalid because of conflict with the State statute, but such a conflict does not go to the question of the municipality's authority to adopt an ordinance concerning that topic.

▆▆ The question is whether municipal authority to regulate pawnbrokers was withdrawn by the subsequent enactment of the State statute. Section 49–13–1 et seq, supra, do not expressly withdraw the municipality's authority to regulate. Defendant must base his argument on a withdrawal by implication. There is no withdrawal of municipal authority by implication unless the later State statute regulating pawnbrokers is irreconcilable with the prior legislative grant authorizing municipal regulation. See State v. New Mexico State Authority, 76 N.M. 1, 411 P.2d 984 (1966); Levers v. Houston, 49 N.M. 169, 159 P.2d 761 (1945); Waltom v. City of Portales, 42 N.M. 433, 81 P.2d 58 (1938). Since there may be double regulation, the later State statute and the prior municipal authority to regulate are reconcilable. Section 49–13–1 et seq, supra, did not withdraw the authority of municipalities to regulate pawnbrokers.

*Whether the ordinance was properly adopted.*

▆▆ The ordinance in question does not recite that it was adopted for any of the purposes itemized in the "general welfare" clause which is § 14–16–1(B), supra. Defendant asserts that such recitals must be stated in the ordinance. Because of the absence of such recitals in the ordinance in question, defendant contends the ordinance was not properly adopted.

Defendant relies on City of Clovis v. Crain, 68 N.M. 10, 357 P.2d 667 (1960) and City of Lovington v. Hall, 68 N.M. 143, 359 P.2d 769 (1961). Certain ordinances questioned in both cases contained recitals that they were enacted for the public health and welfare of the inhabitants of the municipality. In both cases, our Supreme Court considered the recitals in determining the purpose or reason for the ordinance. Even with such recitals, however, the courts will still look to the contents of the ordinance to determine whether the ordinance, in fact, is an exercise of the authority named in the recitals. City of Lovington v. Hall, supra, states:

> " * * * It is true that the declared purpose of legislation is to be given consideration in aid of interpreting the purpose, reason, or occasion for the statute or ordinance. * * * Nevertheless, even though its declared purpose be for the exercise of the police power, the whole act will be examined to ascertain its characteristics and to determine whether there is actually an exercise of that power. * * * "

Neither case is applicable to the ordinance considered in this appeal. Since the ordinance contains no recitals, there is no question concerning an inconsistency between the recitals and the authority exercised in adoption of the ordinance. Further, neither case discussed whether a recital of adopting authority in the ordinance is a prerequisite to the validity of the ordinance. That is the issue under this second point.

At least one section of the "Municipal Code," see § 14–1–1 et seq, N.M.S.A.1953 (Repl. Vol. 3), may suggest a recital is required. That section is § 14–37–1, N.M.

S.A.1953 (Repl. Vol. 3). That section reads in part:

"The governing body may declare, by ordinance, that the licensing or regulation of a business not otherwise exempt by law is conducive to the promotion of the health and general welfare of the municipality and may impose a license fee and a separate license on each place of business * * *."

There may be additional sections indicating a recital of authority may be required. We have not checked all the Municipal Code; it is unnecessary to do so in this case. Certainly, if the State statute expresses a specific method to be followed, the ordinance would have to be adopted in accordance with that method. City of Clovis v. Crain, supra, states:

"* * * the direction of definite and certain method of procedure in the grant of power to the municipality excludes all other methods by implication of law. * * *"

There is nothing in the record indicating that the ordinance regulating pawnbrokers was adopted pursuant to § 14–37–1, supra. We have held that the City had authority to adopt the ordinance under §§ 14–16–1 and 14–17–1, supra. Nothing in those two sections states that a recital is required in order to validly adopt an ordinance under their authority. No statute has been called to our attention, and we have found none, which requires a recital in the ordinance as a prerequisite to the validity of ordinances adopted under §§ 14–16–1 and 14–17–1, supra. Absent a showing of such a prerequisite, an ordinance with the enacting clause required by § 14–16–2, N.M.S.A. 1953 (Repl. Vol. 3) is validly adopted. Here no prerequisite recital has been shown to be applicable to the ordinance in question. The ordinance contains an enacting clause. Accordingly, we hold there is no showing that a recital of the authority exercised is a procedural requirement for the validity of ordinances adopted pursuant to §§ 14–16–1 and 14–17–1, supra.

*Whether the ordinance is in conflict with the statute.*

A municipality may adopt ordinances "* * * not inconsistent with the laws of New Mexico * * *." Section 14–16–1, supra. Defendant asserts the ordinance conflicts with § 49–13–1 et seq, supra, and thus is invalid. According to defendant there are five areas of conflict.

(1) Identification. Section 49–13–2, supra, defines various forms of acceptable identification required of the person with whom the pawnbroker deals. Defendant asserts the ordinance permits only a driver's license as identification but, in addition, requires the address, age, complexion, color of hair and eyes, approximate height and weight, sex and nationality. The ordinance reads: "* * * the description of the person or persons shall include his or their addresses, age, complexion, color of hair and eyes, approximate height and weight, sex, nationality, drivers [sic] license, together with the time and date that said property was received. * * *" What the ordinance does is impose stricter identification requirements.

(2) Date of the transaction. Section 49–13–3, supra, requires the date of the transaction to be recorded. The ordinance requires both the date and the time to be recorded. Again, the ordinance is stricter.

(3) Description. The ordinance has stricter requirements concerning the description of the article pawned.

(4) Amount of purchase price or loan. The State statute does not require the amount to be recorded. The ordinance requires the amount of the purchase price or loan to be recorded.

In each of the above four instances, the ordinance is more strict than the State statute. An ordinance, however, "* * * is not necessarily inconsistent with a state law on the same subject because it provides for greater restrictions or prescribes higher standards than the law. * * *" 6

McQuillin, Municipal Corporations § 24.54 (3rd ed. rev. 1969). The question is whether the stricter requirements of the ordinance conflict with the statute. None of the above four are in conflict. Rather, they complement the State statute. State v. McCall, supra.

(5) Inspection of records. Section 49–13–4, supra, requires the pawnbroker's records to " * * * be open to inspection of law enforcement officers of the county, municipality and state at all times." The ordinance provides: " * * * This record shall be open and available at all times to inspection by the Chief of Police or any member of the police department of the City of Hobbs, or any person duly authorized by the Chief of Police, and any member of the City Commission. * * *"

As to item (5), defendant claims " * * * the ordinance permits an act the general law prohibits, or vice versa. * * *" State v. McCall, supra. The ordinance is broader than the State statute in that it permits inspection by persons not necessarily police officers. However, nothing in the State statute prohibits inspection by other than police officers. Thus, there is no conflict. In addition, defendant claims that the ordinance "improperly adds as permitted inspectors" those persons authorized by the Chief of Police and the members of the City Commission. The only suggested basis for declaring these to be "improper" inspectors is that there is an absence of constitutional safeguards. This claim is too vague for adjudication since defendant does not identify any constitutional right as being involved, and does not point out how this claim of "improper inspectors" applies to him. See State v. Hines, 78 N.M. 471, 432 P.2d 827 (1967).

The judgment of the trial court is affirmed.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.